# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | Civil Action No: |
| Plaintiff, | |
| vs. | |
| HELEN GOLDSTEIN, THE HELEN GOLDSTEIN INSURANCE TRUST, JONATHAN S. BERCK, individually and as Trustee of The Helen Goldstein Insurance Trust ,THOMAS LASKARIS, individually and as Trustee of the Helen Goldstein Insurance Trust, and XLI HOLDINGS, LLC. | |
| Defendants. | |

## COMPLAINT

Plaintiff, American General Life Insurance Company ("American General"), having its principal place of business at 2929 Allen Parkway Houston, Texas 77019, by and through its undersigned counsel, and by way of Complaint against the defendants, Helen Goldstein (hereinafter "Goldstein"), the Helen Goldstein Insurance Trust (hereinafter "the Trust"), Jonathan S. Berck (hereinafter "Berck"), Thomas Laskaris (hereinafter "Laskaris"), and XLI Holdings, LLC (hereinafter "XLI") (hereinafter collectivelly referred to as "Defendants") says:

### Introduction

1. American General seeks a declaration from this Court that Life Policy UM0034959L (hereinafter "the Policy") issued by American General to the Trust in the amount

1

365360.1

of $5,000,000 and insuring the life of Goldstein is void *ab initio* based upon material misrepresentations contained in the Application for the Policy.

2. In connection with the application for the Policy and during the underwriting process, Goldstein, Berck, and the Trust represented to American General that Goldstein's personal net worth was at least $5.5 to $6 million at the time the application was submitted, including $1.5 million consisting of real estate holdings. Defendants represented to American General that Goldstein had an annual household income of $200,000. American General reasonably relied upon these representations in evaluating the Application for insurance and deciding to issue the Policy.

3. American General has been unable to verify Defendants' representations regarding Goldstein's personal net worth and income.

4. Goldstein, Berck, and the Trust further represented to American General that Goldstein would liquidate her investment assets and move those assets into the Trust in order to pay premiums on the Policy. American General reasonably relied upon this representation in evaluating the Application for insurance and deciding to issue the Policy.

5. Upon information and belief, Goldstein, Berck, and the Trust never intended to liquidate any of Goldstein's investment assets in order to fund the Trust and/or pay premiums due under the Policy as represented to American General. Rather, within weeks of issuance of the Policy all beneficial interest in the Trust, and therefore the Policy, was transferred to XLI, which became the sole beneficiary of the Trust and paid all premiums due under the Policy.

6. American General now believes and therefore alleges upon information and belief that Goldstein and the Trust misrepresented Goldstein's personal net worth, income, and true intentions regarding payment of premiums and the source of such payment.

7. If American General had been aware of the true facts concerning Golstein's true personal net worth, income, and true intentions regarding payment of premiums at the time it issued the Policy, American General would have declined to issue the Policy. Therefore, the Policy is void *ab initio*.

8. Moreover, upon information and belief, American General alleges that the Policy was not purchased for purposes of "estate planning" as represented in the Application, and that the Trust was never intended to maintain a controlling or beneficial ownership interest in the Policy. Rather, the Trust was set up and identified as the owner of the Policy for the sole purpose of ceding all controlling interest in the Policy to third parties, Tall Tree and later, to XLI.

9. Thus, the Trust is a sham perpetuated in an attempt to circumvent applicable laws and public policy pertaining to insurable interest. As such, the Trust lacked any insurable interest in the life of Goldstein, and the Policy is, therefore, void *ab initio*.

**Jurisdiction, Venue, and Parties**

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

11. Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because one or more of the defendants resides within this District and a substantial part of the events and omissions giving rise to the claim occurred within this district.

12. American General is a Texas corporation duly authorized to transact the business of insurance in the State of Delaware, with its principal place of business in the State of Texas.

13. Upon information and belief, the Trust is an unincorporated jural entity formed for the sole purpose of serving as owner and beneficiary of the Policy for purposes of concealing from American General the ultimate beneficiaries of the Policy and circumventing statutory and common law rules relating to insurable interest. The Trust is a citzen of the State of Delaware and has an address at 501 Silverside Road, Ste 105, Wilmington, DE 19804. Upon further information and belief, the current solebeneficiary of the Trust is XLI.

14. Berck, upon information and belief, is a citizen of the state of Delaware, whose last known resident address is 501 Silverside Road, Ste 105, Wilmington, DE 19804. Berck served as the trustee of the Trust at the time the Policy was applied for and issued.

15. Laskaris, upon information and belief, is a citizen of Delaware whose last known address is 919 N. Market St., Ste. 770, Wilmington, DE, 19804. Laskaris succeeded Berck as trustee and currently serves as trustee of the Trust.

16. Goldstein is the insured under the Policy at issue. Upon information and belief, Goldstein in a resident of the state of Pennsylvania, whose last known resident address is 1001 City Ave, Apt. EE 719, Wynnewood, PA 19096.

365360.1

17.  XLI is the current owner and sole beneficiary of the Policy. XLI is a limited liability company formed under the laws of the State of Delaware. XLI maintains its principal place of business in the State of New York at c/o X.E. L.I.F.E., LLC, 24 W.40th Street, 3rd Floor, New York, New York, 10018.

## Application and Misrepresentations

18.  On or about March 14, 2007, Goldstein, Berck, and insurance producer Frank B. Weisz executed Part A Life Insurance Application (hereinafter the "Application") seeking issuance of the Policy.

19.  The Application was purportedly executed in Wilmington, DE.

20.  Question 1 of the Application asked for Goldstein's annual income and net worth.

21.  In response to Question 1 of the Application, Goldstein and Berck represented that Goldstein had annual household income of $200,000.

22.  Also in response to Question 1 on the Application, Goldstein and Berck represented that Goldstein had a net worth of $5.5 to $6 million.

23.  In response to Question 3.B. on the Application for the Policy, Goldstein, Berck and the Trust identified the owner of the Policy as the Trust.

24.  .  In response to Question 4 on the Application, Goldstein, Berck and the Trust also represented that the reason for the Policy was "Estate Planning."

25.  By executing the Application, Goldstein and Berck acknowledged and agreed that American General would rely upon the information provided in the Application when

5

365360.1

determining whether to issue the Policy, and Goldstein and Berck promised that the information in the Application, was true and complete as follows:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk and (2) the policy is within its contestable period.

26. On or about April 4, 2007, Goldstein and Berck completed and executed a Financial Questionnaire in further support of their application for issuance of the Policy. The Financial Questionnaire was purportedly executed in Wilmington, DE.

27. Question 1 on the Financial Questionnaire requested a statement of Goldstein's personal pre-tax income from all sources for the current fiscal year and the previous fiscal year.

28. In response to Question 1 on the Financial Questionnaire, Goldstein and Berck represented Goldstein's personal pre-tax income as $200,000 for the current fiscal year (2007), comprised of unearned income from "interest, dividends, and net real estate income."

29. Question 2 on the Financial Questionnaire asks "What is your approximate net worth, i.e., assets minus liabilities? (If necessary, give details in 'Remarks' below)."

30. In response to Question 2 on the Financial Questionnaire, Goldstein and Berck represented Goldstein's approximate net worth as $5.5 to $6 million for the current fiscal year.

6

365360.1

31. In the course of its review of the application, American General received Goldstein's U.S. Individual Income Tax Return for 2006, which indicated Adjusted Income to be only $89,604. Goldstein also received $22,534 in Social Security benefits, according to her 2006 return.

32. Consequently, American General inquired into Goldstein's ability to pay the premiums on the Policy.

33. Goldstein, Berck, and the Trust, represented to American General that Goldstein planned to liquidate her investment assets and move those assets into the Trust in order to pay premiums on the Policy. These representations were affirmed in a letter dated April 23, 2007 from Thomas Shea, Esq., counsel for Goldstein.

34. In reliance upon each and every representation made by and on behalf of Goldstein and Berck in the application and the Financial Questionnaire and in connection therewith, American General executed, issued, and caused to be delivered to the Trust the Policy with an issue date of May 24, 2007.

35. American General incurred costs in connection with the issuance and administration of the Policy.

### Changes in Beneficial Interest in the Trust and Ownership of Policy

36. On June 15, 2007, less than a month after American General issued the Policy, Stanford Goldstein, Goldstein's husband, sold his beneficial interest in the Trust to Tall Tree in exchange for payment of $113,975.

37. Twenty-one days later, on July 6, 2007, Tall Tree sold its beneficial interest in the Trust to XLI in exchange for payment of $267,700.

38. Following the July 6, 2007 transaction, XLI became the sole beneficiary of the trust and the sole premium payor for the Policy.

39. On January 10, 2008 Berck resigned as Trustee and appointed Laskaris as his successor.

40. On March 11, 2009, Laskaris and a representative of XLI executed a Change of Ownership form, requesting a change in ownership of the Policy from the Trust to XLI.

41. On March 12, 2009, a representative of XLI executed a Change of Beneficiary Form designating XLI as the primary beneficiary of the Policy.

### Discovery of Goldstein's, the Trust's and Berck's Misrepresentations

42. American General subsequently conducted a routine review and investigation of the Application and representations contained therein.

43. In the course of its investigation, American General discovered for the first time that Goldstein, Berck, and the Trust materially mispresented Goldstein's net worth and personal income in connection with the Application for the Policy. American General also learned for the first time that Goldstein, Berck, and the Trust misrepresented their true intentions regarding the reason for applying for and purchasing the Policy. American General also learned for the first time that Goldstein, Berck, and the Trust misrepresented their true intentions regarding liquidating assets, payment of premiums, and premium financing.

44. Despite its investigation, which is ongoing, American General has been unable to verify Defendants' representations regarding Goldstein's personal net worth or income. American General is also unable to verify Goldstein's interest in or ownership of any real estate other than the modest home in which she lives.

45. Upon information and belief, Goldstein did not liquidate her investment assets to pay for premiums on the Policy as represented to American General. Rather, XLI became the sole source of premiums on the Policy following the July 6, 2007 transfer of beneficial interest in the Trust from Tall Tree to XLI.

46. Based upon the results of its investigation and review, American General believes and thereupon alleges that Goldstein's actual income and net worth as of the date when the Policy was applied for and issued were not as represented and that if American General knew the true facts regarding Goldstein's actual income and net worth, American General would not have agreed to approve, issue, or deliver the Policy.

47. Based upon the results of the investigation and review, American General believes that Goldstein, Berck and the Trust misrepresented her true intention regarding payment of premiums and the source of such premiums. If American General knew the true facts regarding Goldstein's, Berck's and the Trust's true intentions regarding payment of premiums and premium financing at the time American General agreed to approve, issue, and deliver the Policy, American General would not have agreed to approve, issue, or deliver the Policy.

48. American General reasonably relied upon the misrepresentations and omissions contained in the application for the Policy and otherwise made by Goldstein and the Trust in support of the application.

49. American General incurred costs in connection with the investigation regarding defendants' misrepresentations.

## Goldstein's True Intentions for the Insurance

50. Upon information and belief, neither Goldstein, Berck, nor the Trust had, at any time relevant to the application for issuance of the Policy, any intention of maintaining a controlling or beneficial ownership interest in the Policy or the benefits that might become payable thereunder. Rather, at all times relevant, Goldstein and the Trust intended to sell, surrender, or otherwise fully encumber all controlling or beneficial ownership interest in the Policy and its prospective benefits in exchange for immediate pecuniary gain through financial transactions with Tall Tree and later, with XLI.

51. Based upon information and belief, contrary to Goldstein's, Berck's, and the Trust's representations to American General, neither Goldstein, Berck, nor the Trust ever intended to pay any premiums for the policy from Goldstein's personal assets or assets transferred by Goldstein to the Trust.

52. Goldstein, Berck, and the Trust did not reveal their present intentions to sell, transfer and/or otherwise encumber the ownership interests for the the benefit of third party(ies) at the time they completed the application or accepted delivery of the Policy and paid the first premium. Rather, Goldstein, Berck, and the Trust intentionally concealed their intentions in order to deceive American General into approving, issuing and delivering the Policy as applied for.

365360.1

53. Because Goldstein, Berck, and the Trust had previously formed the intention to immediately sell, surrender, or otherwise fully encumber the Policy, Goldstein and/or the Trust lacked an insurable interest in Goldstein's life as of the date on which the Policy was issued.

### The Misrepresentations Were Material

54. The mispresentations in the Application concerning Goldstein's income and net worth, reason for insurance, and intention to pay premiums by liquidating personal assets materially affected American General's decision to issue and deliver the Policy as written and to accept the risks upon which issuance and delivery of the Policy were based.

55. If American General had been aware of Goldstein's true net worth and income and/or the true reason for insurance and/or Goldstein's true intentions regarding payment of premiums, American General would not have approved, issued, or delivered the Policy.

56. If true and complete information had been provided in response to the questions on the Application, American General would not have approved, issued, or delivered the Policy.

### COUNT I
### (Material Misrepresentation)

57. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

58. . The response to Question 1 on the Application was false and failed to disclose Goldstein's true income and net worth.

59. The response to Question 4 on the Application was false and failed to disclose Goldstein's, Berck's and the Trust's true reasons for applying for the Policy.

60. The statement of acknowledgement and agreement by virtue of Goldstein's and the Berck's signatures on the Application for the Policy was false.

61. All other statements made or submitted to American General relating to Goldstein's income and net worth, including those contained in the Financial Questionnaire, were false, incomplete, and otherwise materially misleading.

62. Statements of Goldstein, Berck, and the Trust and their representatives regarding their intention to liquidate personal assets of Goldstein in order to pay premiums for the Policy were false, incomplete or otherwise misleading.

63. Statements of Goldstein, Berck, and the Trust regarding the purpose of insurance in the Application were false, incomplete or otherwise misleading.

64. Goldstein's true financial status, including her income and net worth, which were not disclosed in the application, was material to the risk undertaken by American General in issuing the Policy as written and was relied upon by American General in issuing the Policy.

65. Goldstein's, Berck's, and the Trust's true intention and reason for seeking issuance of the Policy, which was not disclosed in the Application, was material to the risk undertaken by American General in issuing the Policy.

66. Goldstein's, Berck's, and the Trust's true intentions regarding payment of premiums and the source of such payment, which were not disclosed in the Application, were material to the risk undertaken by American General in issuing the Policy.

365360.1

67. American General's reliance upon the material misrepresentations and ommissions in the Application and/or in connection therewith was reasonable.

68. If Goldstein, the Trust, and/or the Berck had fully and completely disclosed Goldstein's income, net worth, their true reason for seeking issuance of the Policy, or their true intentions regarding source and payment of premiums, or if the true facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have approved, executed, issued, or delivered the Policy and would not have accepted payment of premiums for the Policy.

69. Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio* and of no force or effect since its inception, and American General never has been and never will become liable to anyone thereunder.

70. American General has been damaged by virtue of defendants' material misrepresentations, and has incurred damages, expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payment of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentation, fraud and concealment outlined above, and commencement of the present litigation to enforce its rights.

71. In light of the foregoing damages, expenses, and costs incurred by American General, American General should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs. Without such retention and/or offset, the equitable remedies sought herein, including restitution, would be rendered futile or impossible.

72. Notwithstanding the foregoing, American General stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as directed by the Court in accordance with American General's demand for rescission of the Policy and restitution of the parties to their relative pre-contract positions insofar as it is possible and equitable.

73. Accordingly, American General hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks the Court's direction as to actual payment of same.

## COUNT II

### (Fraud)

74. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

75. The misrepresentations and failure to disclose Goldstein's true net worth, and annual income in the Application and Financial Questionnaire were made and done knowingly by Goldstein, Berck, and the Trust with intent to deceive American General into issuing and delivering the Policy.

76. The misrepresentations and failure to disclose Goldstein's true intentions regarding source and payment of premiums were made and done knowingly by Goldstein, Berck, and/or the Trust with intent to deceive American General into issuing and delivering the Policy.

77. The misrepresentations and failure to disclose Goldstein's or the Trust's true reason for purchasing the Policy set forth in the Application were made and done knowingly by

Goldstein, Berck, and the Trust with intent to deceive American General into issuing and delivering the Policy.

78. The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the Policy.

79. If Goldstein's true net worth, annual income, intentions regarding source and payment of premium and/or reason for purchasing the insurance had been disclosed to American General prior to or at the time of the issuance or delivery of the Policy, American General would never have executed, issued, or delivered the Policy, nor would American General have accepted premiums for the Policy.

80. Because of the intentional and fraudulent misrepresentations and concealment, the Policy is void *ab initio* and of no force and effect since its inception and American General never has been nor will American General become liable to anyone thereunder.

81. American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

## COUNT III

### (Insurable Interest)

82. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

83. At all times relevant to the application for the Policy at issue, the Goldstein Trust lacked any insurable interest in the life of Goldstein.

84. In fact, upon information and belief, the sole purpose for creation of the Goldstein Trust was to further the efforts of Tall Tree, XLI, and/or other presently unknown entities to circumvent applicable insurable interest rules and public policy.

85. The application for and purported ownership of the Policy by the Trust was merely a sham transaction intended to circumvent and violate applicable insurable interest rules and public policy.

86. Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has been and never will become liable to anyone thereunder.

## COUNT IV

### (Declaratory Relief)

87. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

88. An actual controversy has arisen and now exits between American General and defendants concerning their respective rights and duties under the Policy.

89. American General contends that because of the material and fraudulent misrepresentations and concealments regarding Goldstein's true net worth, income, and intention for the Policy, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone thereunder.

90. A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against defendants as follows:

a. A declaration pursuant to 28 U.S.C. §2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

b. In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

c. An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

365360.1

d.   Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.   Such other and further relief as may be available to American General which the Court deems to be equitable and just.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

_____
Megan Harper, Esquire
Delaware Attorney No. 4103
The Curtis Center, Suite 1103 East
Independence Square West
Philadelphia, PA  19106
Phone: 215-627-6900
Facsimile: 215-627-2665
Email: Megan.Harper@wilsonelser.com

*Attorney for Plaintiff, American General Life Insurance Company*

Dated: May 26, 2009