## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | Civil Action No: 1:09-cv-00369-SLR |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| HELEN GOLDSTEIN, THE HELEN GOLDSTEIN INSURANCE TRUST, JONATHAN S. BERCK, individually and as Trustee of The Helen Goldstein Insurance Trust ,THOMAS LASKARIS, individually and as Trustee of the Helen Goldstein Insurance Trust, XLI HOLDINGS, LLC, FRANK B. WEISZ, FRANK B. WEISZ AND ASSOCIATES, P.C. and HIGHLAND CAPITAL BROKERAGE, INC.,. | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff, American General Life Insurance Company ("American General"), having its principal place of business at 2929 Allen Parkway Houston, Texas  77019, by and through its undersigned counsel, and by way of First Amended Complaint against the defendants, Helen Goldstein (hereinafter "Goldstein"), the Helen Goldstein Insurance Trust (hereinafter "the Trust"), Jonathan S. Berck (hereinafter "Berck"), Thomas  Laskaris (hereinafter "Laskaris"), XLI Holdings, LLC (hereinafter "XLI"), Frank B. Weisz (hereinafter "Weisz"), Frank B. Weisz and Associates, P.C. (hereinafter "Weisz and Associates"), and Highland Capital Brokerage, Inc. (hereinafter "Highland Capital") (hereinafter collectivelly referred to as "Defendants") says:

1

**Introduction**

1.      American General seeks a declaration from this Court that Life Policy UM0034959L (hereinafter "the Policy") issued by American General to the Trust in the amount of $5,000,000 and insuring the life of Goldstein is void *ab initio* based upon material misrepresentations contained in the Application for the Policy.

2.      In connection with the application for the Policy and during the underwriting process, Goldstein, Berck, Weisz, Weisz Associates, and the Trust represented to American General that Goldstein's personal net worth was at least $5.5 to $6 million at the time the application was submitted, including $1.5 million consisting of real estate holdings. Said defendants further represented to American General that Goldstein had an annual household income of $200,000. American General reasonably relied upon these representations in evaluating the Application for insurance and deciding to issue the Policy.

3.      During a subsequent investigation concerning the Policy, American General was unable to verify Defendants' representations regarding Goldstein's personal net worth and income. On the contrary, Goldstein's daughter, Barbara Minnix, has confirmed that said representations are untrue.

4.      Goldstein, Berck, Weisz, Weisz and Associates, and the Trust further represented to American General in connection with the application for the Policy that Goldstein would liquidate certain assets and move those assets into the Trust in order to fund premiums for the Policy. American General reasonably relied upon this representation in evaluating the Application for insurance and deciding to issue the Policy.

2

5.      However, Goldstein, Berck, Weisz, Weisz and Associates, and the Trust never intended to liquidate any of Goldstein's investment assets in order to fund the Trust and/or pay premiums due under the Policy as represented to American General.  Rather, within weeks of issuance of the Policy all beneficial interest in the Trust, and therefore the Policy, was transferred to XLI, which became the sole beneficiary of the Trust and paid all premiums due under the Policy.

6.      Goldstein, Berck, Weisz, Weisz and Associates, and the Trust further represented to American General in the application for the Policy that the Policy was being purchased for purposes of "Estate Planning."  American General reasonably relied upon this representation in evaluating the Application for insurance and deciding to issue the Policy.

7.      However, in truth, the Policy was not purchased for purposes of "estate planning," and that the Trust was never intended to maintain a controlling or beneficial ownership interest in the Policy.  Rather, the Trust was set up and identified as the owner of the Policy for the sole purpose of ceding all controlling interest in the Policy to third parties, Tall Tree and later, to XLI.  Thus, the Trust is a sham perpetuated in an attempt to circumvent applicable laws and public policy pertaining to insurable interest and conceal the lack of insurable interest from American General.  As such, the Trust lacked any insurable interest in the life of Goldstein, and the Policy is, therefore, void *ab initio*.

8.      Goldstein, Berck, Weisz, Weisz Associates, and the Trust misrepresented Goldstein's personal net worth,  income, the true reasons for purchasing the insurance, and the true intentions regarding payment of premiums and the source of such payment.

9.     If American General had been aware of the true facts concerning Golstein's true personal net worth, income, the true reasons for purchasing the insurance, and/or the true intentions regarding payment of premiums at the time it issued the Policy, American General would have declined to issue the Policy.  Therefore, the Policy is and should be declared void *ab initio*.

## Jurisdiction, Venue, and Parties

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

11.     Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because one or more of the defendants resides within this District and a substantial part of the events and omissions giving rise to the claim occurred within this district.

12.     American General is a Texas corporation duly authorized to transact the business of insurance in the State of Delaware, with its principal place of business in the State of Texas.

13.     Berck is a citizen of the State of New York maintaining his permanent residence at 205 E 16th Street, Apartment 1A-E, New York, New York 10003-3746 (New York County). Berck served as the trustee of the Trust at the time the Policy was applied for and issued.

14.     Laskaris is a citizen of the State of Delaware maintaining his permanent residence at 2401 Pennsylvannia Ave, Apt 1216, Wilmington, DE 19806-1420.  Laskaris succeeded Berck as trustee and currently serves as trustee of the Trust.

15.    Goldstein is the insured under the Policy at issue.  Goldstein is a citizen of the Commonwealth of Pennsylvania maintaining her permanent residence at  1001 City Ave, Apt. EE 719, Wynnewood, PA 19096.

16.    XLI is the current owner and sole beneficiary of the Policy.  XLI is a Delaware limited liability company with a registered agent address of 2711 Centerville Road, Suite 400, Wilmington, DE 19808.  XLI's members are: (1) Lockwood Pension Services, Inc.; (2) XE L.I.F.E., LLC ; and (3) Arche XLI, LLC.

a.    Lockwood Pension Services, Inc. is a corporation formed under the laws of New York with its principal place of business at 2 Tall Tree Lane, Pleasantville, New York, 10570.

b.    XE Life's sole member is XE Capital Management, LLC ("XE Capital"), a Delaware limited liability company.  All of XE Capital's members are individuals. None of XE Capital's members are citizens of the State of Texas.

c.    The sole member of Arche XLI's is Archimedes, LLC.  The sole member of Archimedes, LLC is Densmore, LLC.  Densmore, LLC's members are Krieger, LLC and Arche Master Fund, LP.  The sole member of Krieger, LLC is Arche Master Fund LP.  The partners of Arche Master Fund, LP are Arche Fund, Ltd. and Arche Fund, LP. Arche Fund, Ltd. is a corporation formed under the laws of Bermuda, with a registered agent address of 9 Church Street, P.O. Box HM 95, Hamilton HM DX, Bermuda.  Arche Fund, LP is a Delaware limited partnership.  All of the partners of Arche Fund, LP are individuals.  None of Arche Fund, LP's partners are citizens of the State of Texas.

17.    The Trust is an unincorporated jural entity formed for the sole purpose of serving as owner and beneficiary of the Policy in order to conceal from American General the ultimate beneficiaries of the Policy and circumvent statutory and common law rules relating to insurable interest.  The Trust is a citzen of the State of Delaware and has an address at 501 Silverside Road, Ste 105, Wilmington, DE 19804.  The current sole beneficiary of the Trust is XLI and the current Trustee of the Trust is Laskaris.  Neither XLI nor Laskaris is a citizen of the State of Texas.

18.    Weisz and Associates is a Pennsylvania Professional Corporation with its principal place of business located at 5 East Germantown Pike, Plymouth Meeting, PA 19462.

19.    Weisz is a citizen of the Commonwealth of Pennsylvania and maintaining his permanent residence at 1214 Page Terrace., Villanova, PA 19085-2132.

20.    Highland Capital is an Alabama corporation, with its principal place of business at 3535 Grandview Parkway, Suite 600, Birmingham, AL 35243.  Weisz and/or Weisz and Associates is an agent, employee or principal of Highland Capital.

## Stranger-Originated Life Insurance

21.    Defendants here engaged in a scheme, which is generally referred to as Stranger-Originated Life Insurance ("STOLI"), or Investor-Originated Life Insurance ("IOLI"), that typically involves the acquisition of outright or beneficial ownership interest in life insurance policies with large face amounts by investors who are strangers to the person insured and who have no insurable interest in the life of the person insured.  Such arrangements constitute illegal wagering contracts contrary to statutory law and public policy.

22.   The investor strangers directly or indirectly assume the obligation of paying premiums due on the policy in exchange for their interest in it, including the right to all or a substantial portion of the death benefits to be paid when the insured dies. Of course, the sooner the insured dies, the fewer premiums the investor strangers are required to pay and the higher the return on their investment.   In an attempt to ensure the highest possible rate of return through prompt pay-out of the death benefits, the investor strangers typically recruit elderly individuals to participate in the application process and serve as the proposed insured.

23.   Similarly, the higher the death benefit on the policy, the greater the ultimate return on the investor strangers' investment.   Thus, as in this case, the net worth and other material information concerning the proposed insured is often inflated or otherwise misrepresented in order to qualify for the most valuable policies with the highest available death benefits at the lowest available premiums.   In some cases, even the health and medical background of the proposed insured is misrepresented.

24.   These arrangements violate state statutory and common law insurable interest laws and are contrary to public policy because the strangers or investors acquire significant speculative economic and pecuniary interests which are best served by the prompt and premature death of the person insured rather than his or her continued life.

25.   The investor strangers have devised various schemes to conceal their lack of insurable interest and circumvent insurable interest laws and public policy. One such scheme – like the one perpetrated by the defendants in this case – involves the formation of an irrevocable life insurance trust ostensibly established by the insured. Perpetrators of the fraud identify a willing proposed insured, match the proposed insured with investor strangers to fund

the premiums required to acquire the policy, arrange for preparation of a trust document, and arrange for any other services necessary to conceal the fraud and secure issuance of the policy. The beneficiary of the sham trust may or may not be an individual or group of individuals with an insurable interest in the insured. However, in all cases, the trust is formed as a sham with the specific present intent and structured to facilitate transfer of the outright or beneficial ownership interest in the life insurance policy after it has been issued.

26.    The proposed insured is typically offered something of value, such as immediate cash payments, in exchange for his or her participation in the application process. The proposed insured is often provided false or misleading assurances by the perpetrators of the fraud that the transaction is legal and appropriate. In any event, as in this case, the proposed insured is nevertheless culpable and either intentionally, willfully and wantonly, recklessly or negligently complicit in the fraud because he or she elects to turn a "blind eye" and accept such bald assurances without having made any reasonable independent inquiry as to the propriety or legality of the transaction or the veracity of the representations submitted to the insurance company in his or her name in support of the application for insurance.

### Application and Misrepresentations

27.    On or about March 14, 2007, Goldstein, Berck, and Weisz executed Part A Life Insurance Application (hereinafter the "Application") seeking issuance of the Policy.

28.    The Application was purportedly executed in Wilmington, DE.

29.    Question 1 of the Application asked for Goldstein's annual income and net worth.

30.     In response to Question 1 on the Application, Goldstein, Berck, Weisz and the Trust represented that Goldstein had annual household income of $200,000.

31.     Also in response to Question 1 on the Application, Goldstein, Berck, Weisz and the Trust represented that Goldstein had a net worth of $5.5 to $6 million.

32.     In response to Question 3.B. on the Application, Goldstein, Berck, Weisz, and the Trust identified the proposed owner of the Policy as the Trust.

33.     In response to Question 4 on the Application, Goldstein, Berck, Weisz and the Trust also represented that the reason for the Policy was "Estate Planning."

34.     By executing the Application, Goldstein, Berck and Weisz acknowledged and agreed that American General would rely upon the information provided in the Application when determining whether to issue the Policy, and Goldstein, Berck, and Weisz promised that the information in the Application, was true and complete as follows:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk and (2) the policy is within its contestable period.

35.     Weisz completed and executed an Agent Certification Form on August 22, 2007.

36.     In the Agent Certification Form, Weisz represented to American General as follows:

1)   I have reviewed and am familiar with all aspects of the premium financing proposal.

2)   Based upon my review of the financing proposal I believe that the costs associated with this premium financing proposal are such that assuming no change in the insured's health it is more likely than not that the insured will maintain the policy in force for the benefit of his/her beneficiaries and those beneficiaries will receive more than 50% of the policy death benefit.

3)   The insured is not receiving cash payment, borrowing funds in excess of those required to pay the scheduled premiums and interest or receiving any other consideration as an inducement to participate in this transaction.

4)   There is no prearranged agreement to transfer the policy nor will the policyholder have a prearranged option or right of first refusal to transfer the policy to a third party.

***

6)   I have read the Field Bulletins regarding Investor Owned Life Insurance, Stranger Owned Life Insurance and Viatical Transactions, and I believe this transaction is in compliance with the company policies as set forth in those Bulletins regardless of whether the lending program is a recourse or non-recourse transaction.

37.   Weisz completed and executed an Agent's Report on March 14, 2007.

38.   In the Agent's Report, Weisz represented to American General that he was not "aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability."

39.   On or about April 4, 2007, Goldstein, Berck, and Weisz completed and executed a Financial Questionnaire in further support of their application for issuance of the Policy. The Financial Questionnaire was purportedly executed in Wilmington, DE.

40.   Question 1 on the Financial Questionnaire requested a statement of Goldstein's personal pre-tax income from all sources for the current fiscal year and the previous fiscal year.

41.     In response to Question 1 on the Financial Questionnaire, Goldstein, Berck, and Weisz represented Goldstein's personal pre-tax income as $200,000 for the current fiscal year (2007), comprised of unearned income from "interest, dividends, and net real estate income."

42.     Question 2 on the Financial Questionnaire asks "What is your approximate net worth, i.e., assets minus liabilities? (If necessary, give details in 'Remarks' below)."

43.     In response to Question 2 on the Financial Questionnaire, Goldstein, Berck, and Weisz represented Goldstein's approximate net worth as $5.5 to $6 million for the current fiscal year.

44.     In the course of its review of the application, American General received Goldstein's U.S. Individual Income Tax Return for 2006, which indicated Adjusted Income to be only $89,604.    Goldstein also received $22,534 in Social Security benefits, according to her 2006 return.

45.     Consequently, American General inquired into Goldstein's ability to pay the premiums on the Policy.

46.     Goldstein, Berck, Weisz, Weisz and Associates, and the Trust, represented to American General that Goldstein planned to liquidate her investment assets and move those assets into the Trust in order to pay premiums on the Policy.   These representations were confirmed in a letter dated April 23, 2007 from Thomas Shea, Esq. of Weisz and Associates.

47.     In reliance upon each and every representation made by and on behalf of Goldstein and Berck in the application and the Financial Questionnaire and in connection

therewith, American General executed, issued, and caused to be delivered to the Trust the Policy with an issue date of May 24, 2007.

48.     American General incurred costs in connection with the issuance and administration of the Policy.

### Changes in Beneficial Interest in the Trust and Ownership of Policy

49.     On June 15, 2007, less than a month after American General issued the Policy, Stanford Goldstein, Goldstein's husband, sold his beneficial interest in the Trust to Tall Tree Advisors, Inc. ("Tall Tree") in exchange for paymentof $113,975.

50.     Twenty-one days later, on July 6, 2007, Tall Tree sold its beneficial interest in the Trust to XLI in exchange for payment of $267,700.

51.     Following the July 6, 2007 transaction, XLI became the sole beneficiary of the trust and the sole premium payor for the Policy.

52.     On January 10, 2008 Berck resigned as Trustee and appointed Laskaris as his successor.

53.     On March 11, 2009, Laskaris and a representative of XLI executed a Change of Ownership form, requesting a change in ownership of the Policy from the Trust to XLI.

54.     On March 12, 2009, a representative of XLI executed a Change of Beneficiary Form designating XLI as the primary beneficiary of the Policy.

## Discovery of the Misrepresentations

55.     American General subsequently conducted a routine review and investigation of the Application and representations contained therein.

56.     In the course of its investigation, American General discovered for the first time that Goldstein, Berck, Weisz, Weisz and Associates, and the Trust materially mispresented Goldstein's net worth and personal income in connection with the Application for the Policy. American General also learned for the first time that Goldstein, Berck, Weisz, Weisz and Associates, and the Trust misrepresented their true intentions regarding the reason for applying for and purchasing the Policy.  American General also learned for the first time that Goldstein, Berck, Weisz, Weisz and Associates, and the Trust misrepresented their true intentions regarding liquidating assets, payment of premiums, and premium financing.

57.     Despite its investigation, which is ongoing, American General has been unable to verify Defendants' representations regarding Goldstein's personal net worth or income. American General is also unable to verify Goldstein's interest in or ownership of any real estate other than the modest home in which she lives.

58.     On the contrary, American General's investigation, which included an interview of Goldstein's daughter, Barbara Minnix, confirmed that Goldstein's income and net worth and reason for applying for the Policy were misrepresented.

59.     Goldstein did not liquidate her investment assets to pay for premiums on the Policy as represented to American General.  Rather, the beneficial interest in the Policy was

almost immediately tensferred to Tall Tree, which subsequently transferred the beneficial ownership interest in the Policy to XLI. XLI became the sole source of premiums on the Policy following the transfer of beneficial interest in the Trust from Tall Tree to XLI.

60.     Based upon the results of its investigation and review, American General believes and thereupon alleges that Goldstein's actual income and net worth as of the date when the Policy was applied for and issued were not as represented.

61.     If American General knew the true facts regarding Goldstein's actual income and net worth, American General would not have agreed to approve, issue, or deliver the Policy.

62.     Based upon the results of the investigation and review, American General believes that Goldstein, Berck, Weisz, and the Trust misrepresented their true intention regarding payment of premiums and the source of such premiums.

63.     If American General knew the true facts regarding Goldstein's, Berck's and the Trust's true intentions regarding payment of premiums and premium financing at the time American General agreed to approve, issue, and deliver the Policy, American General would not have agreed to approve, issue, or deliver the Policy.

64.     American General reasonably relied upon the misrepresentations and omissions contained in the application for the Policy and otherwise made by Goldstein and the Trust in support of the application.

65.     American General incurred costs in connection with the investigation regarding defendants' misrepresentations.

### Goldstein's True Intentions for the Insurance

66.     Upon information and belief, neither Goldstein, Berck, nor the Trust had, at any time relevant to the application for issuance of the Policy, any intention of maintaining a controlling or beneficial ownership interest in the Policy or the benefits that might become payable thereunder.   Rather, at all times relevant, Goldstein and the Trust intended to sell, surrender, or otherwise fully encumber all controlling or beneficial ownership interest in the Policy and its prospective benefits in exchange for immediate pecuniary gain through financial transactions with Tall Tree, and later, with XLI.

67.     Based upon information and belief, contrary to Goldstein's, Berck's, Weisz's, Weisz Associates'and the Trust's representations to American General, neither Goldstein, Berck, nor the Trust ever intended to pay any premiums for the policy from Goldstein's personal assets or assets transferred by Goldstein to the Trust.

68.     Goldstein, Berck, Weisz, Weisz and Associates, and the Trust did not reveal the true present intention to sell, transfer and/or otherwise encumber the ownership interests for the benefit of third party(ies) at the time they completed the application or accepted delivery of the Policy and paid the first premium.   Rather, Goldstein, Berck, Weisz, Weisz and Associates, and the Trust intentionally concealed said intention in order to deceive American General into approving, issuing and delivering the Policy as applied for.

69.     Because Goldstein, Berck, Weisz, Weisz and Associates, and the Trust had previously formed the intention to immediately sell, surrender, or otherwise fully encumber the Policy, Goldstein and/or the Trust lacked an insurable interest in Goldstein's life as of the date on which the Policy was issued.

70.     The misrepresentations in the Application concerning Goldstein's income and net worth, reason for insurance, and intention to pay premiums by liquidating personal assets materially affected American General's decision to issue and deliver the Policy as written and to accept the risks upon which issuance and delivery of the Policy were based.

71.     If American General had been aware of Goldstein's true net worth and income and/or the true reason for insurance and/or Goldstein's true intentions regarding payment of premiums, American General would not have approved, issued, or delivered the Policy.

72.     If true and complete information had been provided in response to the questions on the Application, American General would not have approved, issued, or delivered the Policy.

## COUNT I
### (Material Misrepresentation)

73.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

74.     The response to Question 1 on the Application was false and failed to disclose Goldstein's true income and net worth.

75.     The response to Question 4 on the Application was false and failed to disclose Goldstein's, Berck's and the Trust's true reasons for applying for the Policy.

76.     The statement of acknowledgement and agreement by virtue of Goldstein's and the Berck's signatures on the Application for the Policy was false.

77.     All other statements made or submitted to American General relating to Goldstein's income and net worth, including those contained in the Financial Questionnaire, were false, incomplete, and otherwise materially misleading.

78.     Statements of Goldstein, Berck, Weisz, Weisz and Associates, and the Trust and their representatives regarding their intention to liquidate personal assets of Goldstein in order to pay premiums for the Policy were false, incomplete or otherwise misleading.

79.     Statements of Goldstein, Berck, Weisz, Weisz and Associates, and the Trust regarding the purpose of insurance in the Application were false, incomplete or otherwise misleading.

80.     Goldstein's true financial status, including her income and net worth, which were not disclosed in the application, was material to the risk undertaken by American General in issuing the Policy as written and was relied upon by American General in issuing the Policy.

81.     Goldstein's, Berck's, and the Trust's true intention and reason for seeking issuance of the Policy, which was not disclosed in the Application, was material to the risk undertaken by American General in issuing the Policy.

82.     Goldstein's, Berck's, and the Trust's true intentions regarding payment of premiums and the source of such payment, which were not disclosed in the Application, were material to the risk undertaken by American General in issuing the Policy.

83.     American General's reliance upon the material misrepresentations and ommissions in the Application and/or in connection therewith was reasonable.

84.     If Goldstein, the Trust, and/or the Berck had fully and completely disclosed Goldstein's income, net worth, their true reason for seeking issuance of the Policy, or their true intentions regarding source and payment of premiums, or if the true facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have approved, executed, issued, or delivered the Policy and would not have accepted payment of premiums for the Policy.

85.     Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio* and of no force or effect since its inception, and American General never has been and never will become liable to anyone thereunder.

86.     American General has been damaged by virtue of defendants' material misrepresentations, and has incurred damages, expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payment of commissions and fees in connection with the issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentation, fraud and concealment outlined above, and commencement of the present litigation to enforce its rights.

87.     In light of the foregoing damages, expenses, and costs incurred by American General, American General should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs.  Without such retention and/or offset, the equitable remedies sought herein, including restitution, would be rendered futile or impossible.

88.     Notwithstanding the foregoing, American General stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as directed by the Court in accordance with American General's demand for rescission of the Policy

and restitution of the parties to their relative pre-contract positions insofar as it is possible and equitable.

89.     Accordingly, American General hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks the Court's direction as to actual payment of same.

WHEREFORE, American General demands judgment in its favor and against defendants, jointly and severally, as follows:

a.     A declaration pursuant to 28 U.S.C. §2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

b.     In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT II
### (Fraud)

90.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

91.     The misrepresentations and failure to disclose Goldstein's true net worth, and annual income in the Application and Financial Questionnaire were made and done knowingly by Goldstein, Berck, Weisz, Weisz and Associates, and the Trust with intent to deceive American General into issuing and delivering the Policy.

92.     The misrepresentations and failure to disclose Goldstein's true intentions regarding source and payment of premiums were made and done knowingly by Goldstein, Berck, and/or the Trust with intent to deceive American General into issuing and delivering the Policy.

93.     The misrepresentations and failure to disclose Goldstein's or the Trust's true reason for purchasing the Policy set forth in the Application were made and done knowingly by Goldstein, Berck, Weisz, Weisz and Associates, and the Trust with intent to deceive American General into issuing and delivering the Policy.

94.     The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the Policy.

95.     If Goldstein's true net worth, annual income, intentions regarding source and payment of premium and/or reason for purchasing the insurance had been disclosed to American General prior to or at the time of the issuance or delivery of the Policy, American General would never have executed, issued, or delivered the Policy, nor would American General have accepted premiums for the Policy.

96.     Because of the intentional and fraudulent misrepresentations and concealment, the Policy is void *ab initio* and of no force and effect since its inception and American General never has been nor will American General become liable to anyone thereunder.

97.     American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

WHEREFORE, American General demands judgment in its favor and against defendants, jointly and severally, as follows:

a.     A declaration pursuant to 28 U.S.C. §2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as

21

necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

b.     In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

c.     An order requiring  defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.     Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.     Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT III
### (Lack of Insurable Interest)

98.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

99.     At all times relevant to the application for the Policy at issue, the Goldstein Trust lacked any insurable interest in the life of Goldstein.

100.     In fact, upon information and belief, the sole purpose for creation of the Goldstein Trust was to further the efforts of Tall Tree, XLI, and/or other presently unknown entities to circumvent applicable insurable interest rules and public policy.

101.     The application for and purported ownership of the Policy by the Trust was merely a sham transaction intended to circumvent and violate applicable insurable interest rules and public policy.

102.     Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has been and never will become liable to anyone thereunder.

WHEREFORE, American General demands judgment in its favor and against defendants, jointly and severally, as follows:

a.     A declaration pursuant to 28 U.S.C. §2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is

void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

c.      An order requiring  defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT IV
### (Declaratory Relief)

103.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

104.    An actual controversy has arisen and now exits between American General and defendants concerning their respective rights and duties under the Policy.

105.    American General contends that because of the material and fraudulent misrepresentations and concealments regarding Goldstein's true net worth, income, and intention for the Policy, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone thereunder.

106.    A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against defendants, jointly and severally, as follows:

a.      A declaration pursuant to 28 U.S.C. §2201 that American General is entitled to keep all premiums paid under the Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

25

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation;

c.      An order requiring  defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT V
### (Civil Conspiracy)

101.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

102.    Each of the defendants engaged in, facilitated, encouraged, aided and abetted and/or otherwise acted in furtherance of an overall scheme and conspiracy as detailed herein, all or portions of which scheme and conspiracy were known to each of each of them.

103.    Some or all of the defendants together conspired and agreed to devise and execute a scheme or plan to solicit elderly persons, including Goldstein, and to promote and facilitate the procurement of life insurance policies from insurers, including American General, for which said applicants could not qualify based upon their true net worth, income, reasons for purchasing the insurance, and because of state insurable interest laws, which defendants endeavored to improperly circumvent or avoid.

104.    Each defendant, individually and collectively, engaged in deceptive and fraudulent acts as more fully set forth elsewhere in this document in furtherance of the conspiracy, including but not limited to; meeting together for purposes of planning and executing the conspiracy;  making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; causing, promoting, encouraging, facilitating, or aiding and abetting third parties in making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; providing or obtaining financing for the deceptive and fraudulent transaction; creating or causing to be created, authorizing, executing and otherwise promoting a sham insurance trust and or other artifices to temporarily hold ownership interest in the ill-gotten insurance policy.

105.    American General has incurred substantial harm as a result of defendants' conspiracy, including but not limited to, monetary damage and exposure to potential current or future legal liability resulting from issuance of the illegal policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to 28 U.S.C. § 2201 that American General is entitled to

keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT VI
### (Breach of Fiduciary Duty as to Weisz and Highland Capital)

106.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

107.    Pursuant to the terms and provisions of the contract entered into between and among American General and Weisz and Highland Capital, Weisz and Highland Capital owed to American General a fiduciary duty to submit to American General only those applications for life insurance that Weisz and Highland Capital genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures.

108.    By virtue of the relationship between and among American General and Weisz and Highland Capital and Weisz's and Highland Capital's superior position and ability to evaluate and assess the eligibility, acceptability,  insurability, and suitability of proposed insureds and appropriateness of transactions to be presented to American General for underwriting, Weisz and Highland Capital owed to American General a fiduciary duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Weisz and Highland Capital genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

109.    Weisz and Highland Capital breached their fiduciary duty to American General.

110.    As a direct and proximate cause of Weisz's and Highland Capital's breach of their fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Weisz and Highland Capital, jointly and severally, for compensatory damages, punitive

damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

## COUNT VII
### (Breach of Contract as to Weisz and Highland Capital)

111.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

112.    Weisz and Highland Capital were appointed and authorized to solicit and submit to American General applications for life insurance by virtue and subject to the terms and provisions of a valid and enforceable contract.

113.    Pursuant to the terms and provisions of said contract, Weisz and Highland Capital owed to American General a duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Weisz and Highland Capital genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

114.    Weisz and Highland Capital breached their contract with American General.

115.    As a direct and proximate cause of Weisz's and Highland Capital's breach of their contract with American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Weisz and Highland Capital, jointly and severally, for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

**Count VIII**
**(Negligence – as to Weisz and Highland Capital)**

116.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

117.    Weisz and Highland Capital owed to American General a duty of care in executing their obligations as duly appointed independent insurance brokers, including but not limited to the duty to solicit and submit for underwriting only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Weisz and Highland Capital genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures, and otherwise consistent with law and public policy.

118.    Weisz and Highland Capital breached their duty of care to American General.

119.    Weisz and Highland Capital maliciously, willfully, wantonly, and recklessly disregarded their obligations to American General and the welfare of American General in breaching their duty of care to American General.

120.    As a direct and proximate cause of Weisz's and Highland Capital's breach of their fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Weisz and Highland Capital, jointly and severally, for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

**COOLEY MANION JONES LLP**

Jason A. Cincilla (#4232)
Amaryah K. Bocchino (#4879)
Margaret E. Juliano (#4722)
500 Delaware Avenue, Suite 710
Wilmington, DE  19801
(302) 657-2100
jcincilla@cmjlaw.com
abocchino@cmjlaw.com
*Attorneys for Plaintiff*
*American General Life Insurance Company*

**OF COUNSEL**
Megan Harper, Esquire (#4103)
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
The Curtis Center, Suite 103 East
Independence Square West
Philadelphia, PA 19106
(215) 627-6900
megan.harper@wilsonelser.com

October 13, 2009
314963.1

## CERTIFICATE OF SERVICE

I, Amaryah K. Bocchino, counsel of record for American General Life Insurance Company, hereby certify that on October 13, 2009, I electronically filed a FIRST AMENDED COMPLAINT with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 13, 2009, said FIRST AMENDED COMPLAINT was sent via U.S. First Class Mail to the following person(s):

Peter Jakab
Fein & Jakab
The Woolworth Building
233 Broadway, Suite 930
New York, NY 10279
pjakab@earthlink.net
  *Attorneys for Defendant*
  *Jonathan S. Berck, Individually*
  *and as Trustee of the Helen*
  *Goldstein Insurance Trust*

Weitz and Associates
5 East Germantown Pike
Plymouth Meeting, PA 19465
  *Individual Defendant*

Frank B. Weitz
1214 Page Terrace
Villanova, PA 19085
  *Individual Defendant*

Highland Capital
3535 Grandview Parkway, Suite 600
Birmingham, AL 35243
  *Individual Defendant*

**COOLEY MANION JONES LLP**


Jason A. Cincilla (#4232)
Amaryah K. Bocchino (#4879)
Margaret E. Juliano (#4722)
500 Delaware Avenue, Suite 710
Wilmington, DE  19801
(302) 657-2100
jcincilla@cmjlaw.com
abocchino@cmjlaw.com
  *Attorneys for Plaintiff*
  *American General Life Insurance Company*

**OF COUNSEL**
Megan Harper, Esquire (#4103)
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
The Curtis Center, Suite 103 East
Independence Square West
Philadelphia, PA 19106
(215) 627-6900
megan.harper@wilsonelser.com