IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AMERICAN GENERAL LIFE              )
INSURANCE,                         )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civ. No. 09-369-SLR
                                   )
HELEN GOLDSTEIN, THE HELEN         )
GOLDSTEIN INSURANCE TRUST,         )
JONATHAN S. BERCK INDIVIDUALLY     )
AND AS TRUSTEE OF THE HELEN        )
GOLDSTEIN INSURANCE TRUST,         )
THOMAS LASKARIS INDIVIDUALLY       )
AND AS TRUSTEE OF THE HELEN        )
GOLDSTEIN INSURANCE TRUST,         )
XLI HOLDINGS, LLC, FRANK B.        )
WEISZ, FRANK B. WEISZ AND          )
ASSOCIATES, P.C. and HIGHLAND      )
CAPITAL BROKERAGE, INC.,           )
                                   )
            Defendants.            )

---

Jason A. Cincilla and Amaryah K. Bocchino, Esquire of Cooley Manion Jones LLP, Wilmington, Delaware. Counsel for Plaintiff.  Of Counsel: Robert P. Lesko, Esquire of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Philadelphia, Pennsylvania.

Andrew G. Ahern III, Esquire of Joseph W. Benson, P.A, Wilmington, DE.  Counsel for Defendant.  Of Counsel: Kevan F. Hirsch, Esquire of Kaplin Stewart LLP, Blue Bell, Pennsylvania.

---

**MEMORANDUM OPINION**

Dated: September  *30*  , 2010
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On November 20, 2009, plaintiff American General Life Insurance Company ("plaintiff") filed the present action against defendants Helen Goldstein ("Goldstein"); Jonathan S. Berck ("Berck"); Thomas Laskaris ("Laskaris"); The Helen Goldstein Insurance Trust (the "Trust"); XLI Holdings, LLC ("XLI"); Highland Capital Brokerage Inc. ("Highland"); Frank B. Weisz ("Weisz"); and Frank B. Weisz and Associates P.C. ("Weisz and Associates") (collectively, "defendants"). (D.I. 24)  Plaintiff alleges in its complaint that defendants fraudulently procured a $5 million insurance policy (the "Policy") on the life of Goldstein. (*Id.* at ¶ 1)  Specifically, plaintiff brings claims of breach of fiduciary duty, breach of contract, and negligence against Weisz and Highland as well as civil conspiracy against all parties. (*Id.* at ¶¶ 101-120)  In addition, plaintiff claims material misrepresentation and fraud against Goldstein, Berck, Weisz, Weisz and Associates and the Trust. (*Id.* at ¶¶ 73-97)  Plaintiff seeks a declaratory judgment that the Policy: is voidable or void *ab initio*: (1) for lack of insurable interest; (2) for being procured by material and fraudulent misrepresentations. (*Id.* at ¶¶ 98-106) Plaintiff also seeks damages, attorney fees, and a retainment of some or all of the premiums paid under the Policy. (*Id.* at ¶¶ 89, 97, 102, 105)  The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Presently before the court is Weisz and Weisz and Associates' (collectively, the "Weisz defendants") motion to dismiss

counts I, II, V, VI and VII of plaintiff's amended complaint.[1]  (D.I. 31)  For the reasons

that follow, the court denies the Weisz defendants' motion.

## II. BACKGROUND[2]

Plaintiff is a life insurance company with its principal place of business in Texas.

(D.I. 24 at ¶ 12)  The Weisz defendants and Goldstein are citizens of Pennsylvania, and

the Trust, Laskaris, XLI and Fink are citizens of Delaware.  (*Id.* at ¶¶ 14-19)  Breck is a

citizen of New York, and Highland of Alabama.  (*Id.* at  ¶¶ 13, 20)

Stranger-originated life insurance ("STOLI") policies have emerged over the last

decade, and are comparable to unlawful wagering policies that have been around and

disfavored by courts for centuries.  (*Id.* at ¶ 21)  In a STOLI arrangement, speculators

collaborate with an individual to obtain a life insurance policy in the name of that

individual, and then sell some or all of the death benefit payable upon the death of the

insured to stranger investors.  (*Id.* at ¶ 22)  In turn, the sooner the insured dies, the

more profit these stranger investors are positioned to reap.  (*Id.*)  To maximize the

expected rate of return, STOLI speculators often target individuals who are elderly, and

material information concerning the proposed insured is often inflated or otherwise

misrepresented in order to qualify for the most valuable policies with the highest death

benefits at the lowest premiums.  (*Id.* at ¶¶ 22-23)  The speculators will usually pay for

---

[1] The Weisz defendants are the only remaining defendants in the case.  The others have settled with plaintiff, and the Goldstein life insurance policy has been declared void *ab initio*.  (D.I. 53)

[2] For purposes of the motion to dismiss, the facts as alleged in plaintiff's complaint are assumed to be true.

the insured's related costs, such as application fees and premiums, and may even pay the insured some compensation upon issuance of the policy. (*Id.* at ¶¶ 22, 26) In order to conceal the nature of such policies, the insured individual will often designate the policyholder and/or beneficiary of the proceeds to be a shell third-party entity such as a trust, and then transfer the beneficiary interest to a STOLI entity after obtaining the policy. (*Id.* at ¶ 25)

In the winter of 2007, Goldstein received a telephone call from an unidentified friend who told her about a fast-money scheme, calling it a "fabulous deal." (D.I. 43 at 7) Goldstein's friend told her that all she had to do was submit to a medical examination and apply for an insurance policy, which would be sold upon issuance for a six-figure cash payment. (*Id.*) As part of the alleged STOLI scheme, Goldstein established the Trust on March 13, 2007, naming her husband, Stanford Goldstein, as the beneficiary. (D.I. 24 at ¶¶ 7, 49) On March 14, 2007, Goldstein, Berck and Weisz submitted a formal application (the "Application") to plaintiff requesting $5 million in life insurance coverage, naming the Trust as the proposed owner and beneficiary. (*Id.* at ¶¶ 27, 32) The Application indicated that Goldstein had a net worth of $5.5-$6 million and an unearned annual income of $200,000. (*Id.* at ¶ 30-31) It was signed by Berck on behalf of the Trust as the proposed owner; Weisz as the producing agent; and Goldstein as the proposed insured. (*Id.* at ¶ 27; D.I. 43, ex. A at Appx. 015) All signing parties represented that the reason for the Policy was "estate planning." (D.I. 24 at ¶ 33) The Application was executed in Wilmington, Delaware. (*Id.* at ¶ 28) In the "Agent Certification Form," Weisz represented that:

> 1) I have reviewed and am familiar with all aspects of the premium financing proposal.

3

2) Based on my review of the financing proposal I believe that the costs associated with this premium financing proposal are such that assuming no change in the insured's health it is more likely than not that the insured will maintain the policy in force for the benefit of his/her beneficiaries and those beneficiaries will receive more than 50% of the policy death benefit.

3) The insured is not receiving cash payment, borrowing funds in excess of those required to pay the scheduled premiums and interest or receiving any other consideration as an inducement to participate in this transaction.

4) There is no prearranged agreement to transfer the policy nor will the policyholder have a prearranged option or right of first refusal to transfer the policy to a third party.

. . .

6) I have read the Field Bulletins regarding Investor Owned Life Insurance, Stranger Owned Life Insurance and Viatical Transactions, and I believe this transaction is in compliance with the company policies as set forth in those bulletins regardless of whether the lending program is a recourse or non-recourse transaction.

(D.I. at ¶ 36)  In his agent's report, Weisz represented to plaintiff that he was not "aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability."  (*Id.* at ¶ 38)

On or about April 4, 2007 in Wilmington, Goldstein, Berck, and Weisz completed and executed a financial questionnaire.  (*Id.* at ¶ 39).  Consistent with the Application, the parties indicated that Goldstein's personal pretax income for 2007 was $200,000, comprised of unearned income from "interest, dividends, and net real estate income." (*Id.* at ¶ 41)  Goldstein's approximate net worth was reported to be between $5.5 and $6 million.  (*Id.* at ¶ 43)

While reviewing the Application, plaintiff received Goldstein's U.S. Individual Income Tax return for 2006, which indicated an adjusted income of only $89,604, along with $22,534 in Social Security benefits.  (*Id.* at ¶ 44)  In response to plaintiff's concern about Goldstein's ability to pay the premium for a policy, Goldstein, Berck, Weisz, Weisz

4

and Associates and the Trust represented to plaintiff that Goldstein planned to liquidate her investment assets and move those assets to the Trust in order to pay the premium. (*Id.* at ¶ 46)  These representations were confirmed in a letter dated April 23, 2007 from Thomas Sea, Esq. Of Weisz and Associates. (*Id.*)  In reliance on these assurances and the answers given in the Application and financial questionnaire, plaintiff issued and delivered the Policy to the Trust with an issue date of May 24, 2007. (*Id.* at ¶ 47)

On June 15, 2007, less than a month after plaintiff issued the Policy, Stanford Goldstein sold his beneficial interest in the Trust to Tall Tree Advisors, Inc ("Tall Tree") for $113,975. (*Id.* at ¶ 49)  Twenty-one days later, Tall Tree sold its beneficial interest in the Trust to XLI for $267,700. (*Id.* at ¶ 50)  On March 12, 2009, after a series of transactions, XLI became the owner of the Trust and the primary beneficiary of the Policy. (*Id.* at ¶ 54)

After XLI became the owner of the Trust and the primary beneficiary of the Policy, plaintiff conducted a routine review and investigation of the Application and representations contained therein. (*Id.* at ¶ 55)  During the course of the investigation, plaintiff alleges that it discovered that Goldstein, Berck, Weisz, Weisz and Associates and the Trust materially misrepresented Goldstein's net worth, personal income, reason for purchasing the Policy, and intention to liquidate assets to pay the Policy's premiums. (*Id.* at ¶ 56)  Plaintiff has been unable to verify Goldstein's personal net worth or income to date. (*Id.* at ¶ 57)  After speaking with Goldstein's daughter, Barbara Minnix, plaintiff confirmed that Goldstien's income, net worth and reason for applying for the Policy were misrepresented on the Application. (*Id.* at ¶ 58)

Plaintiff claims that neither Goldstein, Berck nor the Trust had, at any time prior to the issuance of the Policy, any intention of maintaining a controlling or beneficial

ownership interest in the Policy. (*Id.* at ¶ 66)   Rather, Goldstein and the Trust intended to sell the Policy from its inception to Tall Tree and XLI. (*Id.*)   Had plaintiff known the true intentions of all parties involved, as well as Goldstein's actual net worth and income, plaintiff would not have issued the Policy. (*Id.* at ¶ 72)

## III. STANDARD

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it.   For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).   The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).   Under the law of the State of Delaware, the law of the place where an insurance contract was made governs the obligations imposed by such contract. *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).   A court may consider the pleadings, public record, orders, and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted).   A complaint

does not need detailed factual allegations; however, "a plaintiff's obligation to provide

the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545

(alteration in original) (citation omitted). The "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1950 (2009). Such a determination is a context-specific task requiring the court "to

draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff argues that the Policy is void ab initio or voidable due to: (1) lack of

insurable interest; and (2) being procured by material and fraudulent

misrepresentations. (*Id.* at ¶¶ 98-106) To the extent that defendants were involved in

fraud, material misrepresentation, civil conspiracy, negligence, breach of fiduciary duty

and/or breach of contract, plaintiff seeks compensatory and punitive damages, as well

as retainment of some or all of the premiums paid on the Policy. (*Id.*) In their motion to

dismiss, the Weisz defendants assert that: (1) Pennsylvania law applies to plaintiff's

claims against the Weisz defendants; (2) plaintiff's tort claims against Weisz are barred

by Pennsylvania's "gist of the action" doctrine; (3) plaintiff cannot state a claim for fraud

against Weisz and Associates; (4) the alleged misrepresentations were not material; (5)

plaintiff is not entitled to recover its attorney fees in bringing this action; (6) plaintiff has

failed to allege that the Weisz defendants engaged in a civil conspiracy; (7) the

7

amended complaint establishes the existence of an insurable interest; and (8) plaintiff has failed to allege a claim against Weisz for breach of fiduciary duty.  (D.I. 32, 49)

## A. Applicable Law

The Weisz defendants argue that Pennsylvania law should apply to plaintiff's claims, contending that Pennsylvania has the most significant relationship to said claims.  (D.I. 32 at 6)  The Weisz defendants are correct that, in general, Delaware courts apply the "most significant relationship" test to determine which law to apply in both tort and contract claims. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47 (Del. 1991).  However, Delaware courts have implicitly recognized that, in the context of insurance contracts, the most significant relationship is the forum in which the contract was executed. *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).  In the case before the court, it is uncontested that the Policy was executed in Wilmington, Delaware.  (D.I. 8 at ¶ 28)

The Weisz defendants argue that the contract in question is not the Policy, but is instead the Agent Certification Form.  (D.I. 32 at 9-10)  The court finds their argument unpersuasive.  The Agent Certification Form is ancillary to the true source of the alleged fraud and misrepresentation:  the Policy.  It is uncontested that the Weisz defendants participated in the acquisition of the Policy, and assisted Goldstein and Breck in filing out application forms.  Weisz went so far as to sign the Application as the writing agent. (D.I. 43, ex. A at Appx. 015)  The Agent Certification Form merely affirms that Weisz fulfilled his duties as an insurance agent.  The Application and the Policy that issued therefrom are the true sources of conflict, and it is appropriate that the law that governs the interpretation of the Policy governs this dispute.

In further support of their argument, the Weisz defendants contend that, because plaintiff has asserted both tort and contract claims, this court should engage in a separate choice of law analysis for both causes of action. (D.I. 32 at 6, n.2) They claim that, since the events surrounding the tort claims occurred in Pennsylvania, Pennsylvania has the most significant relationship and its law should govern independently of the law of the contract.

A separate choice of law analysis is generally appropriate for each cause of action. *See Whitwell v. Archmere Academy, Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006). However, in recent years, Delaware courts have rejected the "argument that different states' laws should be applied to claims sounding in tort and contractual claims." *AT&T Wireless Serv., Inc. v. Fed. Ins. Co.*, Civ. No. 03C-12-232, 2007 WL 1849056 at *3 (Del. Super. Ct. April 23, 2007). *See also Millet v. Truelink Inc.*, Civ. No. 05-599, 2006 WL 2583100, at *3 (D. Del. 2006); *Abry Parterners V, L.P. v. F&W Acquisition, LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006). Where contract and tort claims are intertwined and interdependent, both claims should be analyzed under the law of the same state. Such reasoning comports with this court's choice of law analysis in other STOLI cases. *See generally Lincoln Nat'l. Life Ins. Co. V. Snyder*, - F. Supp. 2d -, Civ. No. 09-888, 2010 WL 2787453 (D. Del. July 15, 2010); *Sun Life Assur. Co. Of Canada v. Berck*, - F. Supp. 2d -, Civ. No. 09-498, 2010 WL 2607247 (D. Del. June 29, 2010). As the court in *Nedlloyd Lines B.V. v. Superior Court* stated: "[This court has] serious doubts that any rational businessperson . . . would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single contract based relationship." 834 P.2d 1148, 1154 (Cal. 1992). Because of the

9

tendency of Delaware courts to analyze tort claims arising from a contract under the same law as the contract itself, Delaware law governs all of plaintiff's claims.[3]

## B. Fraud

Pursuant to Federal Rule of Civil Procedure 9(b), a heightened pleading standard applies to fraud claims, requiring that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168. 207 (Del. Ch. 2006) (alterations in original), *aff'd sub nom., Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007). The rule "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." *Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999). However, "the Third Circuit has warned that a court should not 'focus[] exclusively on [the] particularity language' as that 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Household Int'l., Inc. V. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 373 (D. Del. 2003) (citing *Seville Inds. Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Under Delaware law, the elements for fraud are:

> (1) defendant's false representation, usually of fact; (2) made either with knowledge or belief or with reckless indifference to its falsity; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation; and (5) reliance damaged the defendant.

*Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).

Weisz and Associates argues that plaintiff has failed to properly identify the speaker of the fraudulent statements in all but one allegation. (D.I. 32 at 11)  As for the proper allegation, Weisz and Associates argues that plaintiff cannot use the

---

[3] Because the court has already found that Delaware law controls, it need not address Pennsylvania's gist of the action doctrine.

representations contained therein to support its claim for fraud because these

representations were not included in the Application and, thus, are barred by 18

Delaware Code § 2710.  (D.I. 32 at 11)

### 1. Identity of the speaker

The allegations relevant to Weisz and Associates' argument are found in the

following paragraphs::

> The misrepresentations and failure to disclose Goldstein's true net worth
> and annual income in the Application and financial questionnaire were
> made and done knowingly by Golstein, Berck, Weisz, Weisz and
> Associates, and the Trust with intent to deceive [plaintiff] into issuing and
> delivering the Policy.
>
>                                      . . .
>
> The misrepresentations and failure to disclose Goldstein's or the Trust's
> true reason for purchasing the Policy set fourth in the Application were
> made and done knowingly by Goldstein, Berck, Weisz, Weisz and
> Associates, and the Trust with intent to deceive [plaintiff] into issuing and
> delivering the Policy.

(D.I. 24 at ¶¶ 91, 93)

Plaintiff's allegations contain a greater level of specificity than is found in cases

where pleadings failed to satisfy the requirements of 9(b).  In the case before the court,

plaintiff has specified which statements were false, identified the parties it believes

made the statements, and identified the document where the statements are contained.[4]

Such pleading satisfies the specificity requirement of Rule 9(b), and survives a motion

to dismiss for failure to state a claim.  *Compare Klein v. General Nutrition Co., Inc.*, 186

F.3d 338, 345 (3d Cir. 1999) (pleadings dismissed for lack of specificity when plaintiff

claimed that defendant's "management" made the false statements without identifying

---

[4] Plaintiff's pleading "place[s] the defendants on notice of the precise misconduct
with which they are charged."  *Seville*, 742 F.2d at 791.  In the above paragraphs,
plaintiff has identified the speaker of the false statement.  Each identified defendant
either signed the documents or was represented by a signatory.  Because of their
signatures, defendants are deemed to have adopted the fraudulent statements.

who among the management spoke); *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666,

675 (3d Cir. 1988) (pleadings dismissed for lack of specificity when plaintiff alleged the

speaker of the false statements was the defendants and/or persons acting under

defendants' direction or control).

## 2. Representations that are not part of the Application

Weisz and Associates reason that plaintiff cannot use the representations found

in of the amended complaint to support its claim for fraud because the representations

were not included in the Policy.[5]  (D.I. 32 at 12)  Weisz and Associates rely on 18

Delaware Code § 2710 to argue that, "where statements and alleged

misrepresentations are not included as a part of the insurance policy, an insurer may

not rely on these statements or alleged misrepresentations in seeking to rescind the

policy." (*Id.* at n.4)  Section 2710 prohibits the use of an application for life insurance as

evidence in any action related to said insurance unless a true copy of the application

was attached to or otherwise made a part of the insurance policy.  18 Del. C. §

2710(a).[6]   In analyzing  § 2710 arguments against the admissibility of evidence not

attached to, or made part of, an insurance application, this court has found that the

---

[5] The representations in question are found in ¶ 46 of the amended complaint:

> Goldstein, Berck, Weisz, Weisz and Associates, and the Trust
> represented to American General that Goldstein planned to
> liquidate her investment assets and move those assets into the
> Trust in order to pay premiums on the Policy.  These
> representations were confirmed in a letter dated April 23, 2007
> from Thomas Shea, Esq of Weisz and Associates.

(D.I. 24  ¶ 46)

[6] "No application for the issuance of any life or health insurance policy . . . shall
be admissible in evidence in any action relative to such policy or contract, unless a true
copy of the application was attached to or otherwise made a part of the policy or
contract when issued."  18 Del. C. § 2710(a)

question of admissibility turns on whether the parties intended that the representations would become a part of the application. *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, - F. Supp. 2d -, Civ. No. 08-488, 2010 WL 3395661, at *6 (D. Del. Aug 30, 2010); *Lincoln Nat. Life Ins. Co. v. Snyder*, - F. Supp. 2d -, Civ. No. 09-888, 2010 WL 2787453, at *2 n.4 (D. Del. July 15, 2010). In the present action, there is no such indication. According to the complaint, the representations were made in response to an inquiry about Goldstein's ability to pay the Policy's premiums. (D.I. 24 at ¶¶ 45-46) Unlike *Lincoln*, the letter embodying the representations was not called an "application amendment" by the parties, nor was it included in a proposed copy of the Policy. *Lincoln Nat. Life Ins. Co*, 2010 WL 2787453, at *2 n.4. Unlike *Principal*, the letter was not clearly marked "Application Supplement," nor did it contain language that "statements . . . are part of my insurance application." *Principal Life Ins. Co.,* 2010 WL 3395661, at *6. Given the lack of indicia illustrating the intent of the parties, plaintiff may not use the representations found in ¶ 46 of the amended complaint to support its claim for fraud.

### C. Materiality of the Misrepresentations

Intertwined with plaintiff's claim for fraud is the claim that the intentional misrepresentations made by the Weisz defendants were material to plaintiff's decision to issue the Policy. (D.I. 24 at ¶¶ 73-97) "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Kungys v. U.S.*, 485 U.S. 759, 786 (1988) (citing Restatement (Second) of Contracts § 162). "It is hornbook law that where

13

the insurer seeks a specific answer, the fact elicited will usually be treated as a material one." *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 894 (D. Del. 1994).

The Weisz defendants argue that plaintiff could not have relied on the misrepresentation of Goldstein's income when it issued the Policy because it obtained Goldstein's true income from a tax return while reviewing the Application. (D.I. 49 at 5-6)  The court agrees.  Plaintiff cannot claim to have relied on the misrepresentation of Golstein's income when plaintiff obtained the true amount from another source before the Policy issued.  (D.I. 24 at ¶ 44)  Plaintiff took the additional step of amending the Policy to reflect Goldstein's true income, thereby removing any doubt as to whether it knew the actual value.  (D.I. 43, ex. B at "Amendment of Application").  Once plaintiff knew Goldstein's true income, the misrepresentation could no longer induce plaintiff into issuing the Policy.

Next, the Weisz defendants argue that plaintiff cannot establish that it relied on the misrepresentation of Goldstein's net worth when it issued the Policy because plaintiff failed to follow up on its notes to obtain third-party financials.  (D.I. 49 at 6-7)  The Weisz defendants also claim that plaintiff cannot establish reliance on any misrepresentation relating to Goldstein's purpose for obtaining the Policy because plaintiff never investigated nor inquired as to whether defendants had a plan to transfer the Policy to another person.  (D.I. 49 at 8-10)  However, "Delaware courts have . . . [held] that, even if an insurer should have researched the veracity of an applicant's representations, it has not waived the right to later assert and prevail on a claim for misrepresentation."  *Oglesby*, 877 F. Supp. at 895.  In addition, plaintiff has an executed Agent Certification Form which states that "there is no prearranged agreement to

14

transfer the Policy nor will the Policy holder have a prearranged option or right of first

refusal to transfer the Policy to a third party." (D.I. 43, ex. Q at Appx. 118)  Given that

"materiality is a mixed question of fact and law that generally cannot be resolved on the

pleadings," the court declines to find that the misrepresentations of Goldstein's net

worth and purpose for obtaining the Policy were immaterial. *See Albert v. Alex. Brown

Mgmt. Servs., Inc.*, Civ. No. 762, 2005 WL 2130607, at \*2 (Del. Ch. Aug. 26, 2005).

### D. Civil Conspiracy

To plead a claim for civil conspiracy under Delaware law, a plaintiff must allege

"(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done

in furtherance of the conspiracy; and (3) [a]ctual damage." *Nicolet, Inc. V. Nutt*, 525

A.2d 146, 149-50 (Del. 1987).  "To prove a conspiracy . . . it is not necessary that there

be an express agreement." *Empire Fin. Servs., Inc. v. Bank of New York*, 900 A.2d 92,

97 (Del. 2006).  "Although the elements of a claim are flexible, it is essential that there

be an underlying wrongful act, such as a tort or statutory violation.  A breach of contract

is not an underlying wrong that can give rise to a civil conspiracy claim." *Naaco Indus.,

Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009).

The Weisz defendants do not argue that plaintiff has failed to adequately plead

the first and third elements of civil conspiracy.[7]  Instead, they contend that the amended

complaint fails to allege that the Weisz defendants participated in an unlawful act done

in furtherance of the conspiracy.  (D.I. 32 at 15)  This argument is unavailing.  The court

has already found that plaintiffs have stated a claim for intentional misrepresentation

and, under Delaware law, intentional misrepresentation is a sufficient underlying tort to

---

[7] The Weisz defendants only briefed Pennsylvania law, however, Pennsylvania
law is analogous enough to Delaware law in the context of civil conspiracy that the court
will address their arguments.

support a claim for civil conspiracy. *Duffield Associates, Inc. v. Merdian Architects & Eng'rs. LLC*, Civ. No. S10C-03-004, 2010 WL 2802409, at \*5 (Del. Super. Ct. July 12, 2010). *See also In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 460-61 (Bankr. D. Del. 2006) (finding that under Delaware law, fraud is a sufficient underlying tort to support a claim for civil conspiracy).

### E. Insurable Interest

The Weisz defendants argue that plaintiff's amended complaint itself establishes that both the trustee and Goldstein's husband had an insurable interest in the life of Goldstein. (D.I. 32 at 16)  To the contrary, the court finds that plaintiff has sufficiently pled facts to state a claim that the Policy was void ab initio for lack of an insurable interest.

Delaware law prohibits procurement of life insurance if the insured does not have an insurable interest.  18 Del. C. § 2704(a) (2010).  An insurable interest is defined as benefits that are payable to individuals related closely by blood or by law who have a substantial interest out of love and affection; or to any other individual with a lawful and substantial interest in having the life, health or bodily safety of the insured continue.  18 Del. C. § 2704(c) (2010).  The Weisz defendants contend that Stanford Goldstein owned the beneficial interest in the Trust until approximately one month after plaintiff issued the Policy, thereby establishing that an insurable interest in the Trust and the Policy existed at the same time plaintiff issued the Policy.  While there is no doubt that an insured can name his own trust as the owner and beneficiary of his life insurance policy, the insurable interest doctrine developed in common law and out of public policy concerns that deem insurance policies without an insurable interest **at inception** to be

illegal wagering contracts. "[Wagering contracts] have a tendency to create a desire for the [death of the insured]. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."[8] See Warnock v. Davis, 104 U.S. 775, 779 (1881).

Lack of insurable interest is an issue that arises only at the time of policy procurement. 18 Del. C. § 2704(a) (2010) ("[N]o person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his/her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured."). However, neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a lack of insurable interest at the time of policy procurement, and no clear consensus has emerged across jurisdictions regarding this issue.[9] Compare Paulson, 2008 WL 451054 at *1-*2 (holding, under Minnesota law, that a mutual intent of the insured and a third party to avoid the prohibition on wagering contracts is required to allege lack of insurable

---

[8] Wagering contracts have long been condemned as being against public policy. Id. at 779; see also, e.g., Herman v. Provident Mut. Life Ins. Co. of Philadelphia, 886 F.2d 529, 534 (2d Cir. 1989); North American Co. for Life and Health Ins. v. Lewis, 535 F. Supp. 2d 755, 759 (S.D. Miss. 2008). The insurable interest requirement emerged in order "to curtail use of insurance contracts as wagering contracts by distinguishing between contracts that sought to dampen the risk of actual future loss and those that instead sought to speculate on whether some future contingency would occur." Sun Life Assurance Co. of Canada v. Paulson, Civ. No. 07-3877, 2008 WL 451054, at *2 n.4 (D. Minn. Feb. 15, 2008) (citation omitted). The Supreme Court has long ago explained that a wagering contract "gives the [policyholder] a sinister counter interest in having the life come to an end." Grigsby v. Russell, 222 U.S. 149, 154 (1911).
   [9] It is also well established that, so long as the insured does not initially take out the policy as a mere cover for a wager, the beneficial interest may be legally transferred, after procurement, to an individual or entity without an insurable interest. See, e.g., Product Clearing v. Angel, 530 F. Supp. 2d 646, 648 (S.D.N.Y. 2008) (citing Grisby, 222 U.S. at 154-56).

interest), *with Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D.N.J. 2009) (finding that unilateral intent was sufficient in alleging an insurable interest challenge).

In support of its motion for declaratory judgment that the Policy lacked an insurable interest at inception, plaintiff has alleged that: (1) XLI, rather than Goldstein or the Trust, paid at least the bulk of the premiums for the Policy (D.I. 24 at ¶ 5); (2) the Trust was never intended to maintain a controlling or beneficial ownership interest in the Policy (*id.* at ¶ 7); (3) material misrepresentations were made on the Application regarding Goldstein's income, net worth and purpose for the Policy in order to conceal its STOLI nature (*id.* at ¶¶ 1-9); (4) Stanford Goldstein sold his beneficial interest in the Trust to Tall Tree less than a month after issuance of the Policy, and within six days of its delivery to the Trust (*id.* at ¶ 49); (5) an interview with Goldstein's daughter confirmed that Goldstein's income, net worth, and reason for applying for the Policy were misrepresented (*id.* at ¶ 58); and (6) contrary to the representations made to plaintiff, Goldstein did not liquidate her assets to pay the premiums for the Policy. (*id.* at ¶ 59)

Absent a lack of insurable interest at inception, it is legal for a policyholder to transfer beneficial interest in a policy. The court finds that the complaint sufficiently alleges, beyond a speculative level, that there was either an arrangement in place or a unilateral intent, at the time of procurement, to transfer the Policy due to its immediate sale upon issuance. In the eyes of the court, plaintiff's allegations regarding a lack of insurable interest meet the *Iqbal* plausibility standard.

**F. Fiduciary Duty**

18

"While employed by an insurance company, officers and agents are in a fiduciary position." *Peoples Sec. Life Ins. Co. v. Fletcher*, Civ. No. 913, 1988 WL 26791, at *3 (Del. Ch. Mar. 16, 1988). "An insurance agent, like any other agent, is required to exercise reasonable care, skill and diligence in the exercise of his employment and if he fails to do so, he may be held responsible for any damage that may result." *St. Jones River Gravel Co. v. Hartford Fire Ins. Co.*, Civ. No. 78C-MR-7, 1980 WL 308672, at *6 (Del. Super. Ct. July 7, 1980).

Weisz argues that a fiduciary relationship requires a relationship of trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other. (D.I. 32 at 18) He claims that a fiduciary relationship can only arise from a contract when "the parties' relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." (D.I. 32 at 19) Weisz reasons that because plaintiff is a national insurance underwriter who independently reviews applications submitted for life insurance policies, they do not have a fiduciary relationship.

The court finds this argument unpersuasive. While Weisz may state the correct standards for finding a fiduciary relationship, certain fiduciary relationships exist as a matter of law. Just as a fiduciary relationship exists between an attorney and his client regardless of the client's level of sophistication or reliance on the attorney, so does a fiduciary relationship exist between an insurance agent and provider. *Peoples Sec. Life Ins. Co.*, 1988 WL 26791, at *3; *River Gravel Co.*, 1980 WL 308672, at *6. It is uncontested that Weisz was acting as an insurance agent of the plaintiff and, as such,

19

he owed it a fiduciary duty. Plaintiff's allegation that Weisz breached his "duty to submit to [plaintiff] only these applications for life insurance on proposed insureds that are eligible acceptable and insurable" establishes a breach of Weisz's fiduciary duty, and is sufficient to survive a motion to dismiss for failure to state a claim. (D.I. 24 at ¶ 108)

### G. Recovery of Attorney Fees

Absent a relevant federal statute, state rules generally determine the award of attorney fees in diversity cases. *See Montgomery Ward & Co., Inc. v. Pac. Indem. Co.*, 557 F.2d 51, 56-57 (3d Cir. 1977). Delaware follows the American rule where, absent a statute or contract to the contrary, "prevailing litigants are responsible for the payment of their own attorney fees." *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1043-44 (Del. 1996). "In the ordinary adversary litigation the losing party is not assessed the counsel fees of his opponent unless the action was fraudulent." *Wilmington Trust Co. v. Coulter*, 208 A.2d 677 (Del. Ch. 1965); *see also Gans v. MDR Liquidating Corp.*, Civ. No. 9630, 1998 WL 294006, at *3 (Del. Ch. May 22, 1998) (listing "fraud, bad faith, or other outrageous conduct from which the claim arose" as a special basis for which a court may award attorney fees); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989) ("Under the 'equity' exception a litigant may secure an award of counsel fees upon a showing of bad faith by an opposing party.") (citing *Division of Child Support Enforcement v. Smallwood*, 526 A.2d 1353, 1356-57 (Del. 1987)).

The decision to award attorney fees under special circumstances such as fraud is a discretionary one left to the court. *See Gans*, 1998 WL 294006 at *3. As such, the court will only make this determination after all the facts have been determined through

discovery and will not deny plaintiff's request for attorney fees at this stage of the proceedings.

## V. CONCLUSION

For the aforementioned reasons, the court denies the Weisz defendants' motion to dismiss counts I, II, V, VI and VII of plaintiff's amended complaint.  An appropriate order shall issue.